No. 6483.

WILLIAM GREEN *v.* THE STATE.

THEFT—FACT CASE.—See the statement of the case for evidence *held* insufficient to support a conviction for theft because it not only fails to establish a fraudulent taking of the alleged stolen property, but shows that it was taken under a mistake of fact and claim of right.

APPEAL from the County Court of Brown. Tried below before the Hon. R. P. Conner, County Judge.

The conviction in this case was for the theft of a pair of blankets, the alleged property of S. R. Switzer, in Brown county, Texas, on the first day of December, 1888. The penalty assessed against the appellant was a fine of ten dollars, and confinement in the county jail for twenty-four hours.

S. R. Switzer was the first witness for the State. He testified that he lived in Comanche county, Texas. Witness went to Brownwood, in Brown county, about the last day of November, 1888, traveling in a wagon in which he carried certain bed clothes, including the blankets mentioned in the indictment. They were gray blankets with a black border, worth about three dollars. On reaching Brownwood the witness "put up" at J. T. Triplett's wagon yard. Early that night he informed Mr. Triplett that he was going to spend the night with some friends in town, and asked if he had a place about the wagon yard where he could safely store his bedding for the night. Mr. Triplett indicated a certain house in the wagon yard as a safe place. Witness put his bedding, including the said blankets, in that house, and told Mr. Triplett that if any of his, Triplett's, customers should need more cover than they had, they could use his. Witness then went off. When he returned to the wagon yard between nine and ten o'clock on the next morning, he missed his said blankets from the house in which he had put them. He then asked Triplett if they were used the night before by any of his, Triplett's, friends or customers. Triplett replied that they were not, and, when witness told him that the blankets were gone, he said that some parties from McCulloch county had just left the yard, and that perhaps they had taken

the blankets through mistake.    Witness and Triplett then went up town and found the parties from McCulloch county, but they did not have the blankets.    Soon afterwards Triplett met a man on the street whom witness did not know, and asked him if he knew anything about the blankets.    The man replied that he did not, but that Bill Green, the defendant, on the night before got a pair of blankets from the harness house in the wagon yard of Triplett, and asked him to take them home for him, and that the said blankets would be found on his wagon rolled up with his bedding.    Witness and Triplett then went to that man's wagon.and found the blankets.    The said blankets were taken without the consent of the witness.    Witness did not know a Mr. Wainscot, and could not say that the man from whose wagon the blankets were recovered was named Wainscot.

J. T. Triplett, on his examination in chief by the State, testified substantially as did the witness Switzer.    On his cross examination he said that he had known the defendant for eight or ten years.    Defendant very frequently "put up" at witness's wagon yard, and often remained there for several days at a time.    He went into and out of the houses on the premises at will, and came and went off frequently without saying anything to witness.    The harness house in the yard was kept open for the accommodation of customers, to store and take out their property when and as they wished.    Frank Allison often kept horses in the wagon yard, as long as ten days at a time, and came and left at will, sometimes without saying anything to witness.    Witness and defendant never had a conversation about Switzer's blankets until about two weeks before this trial, when defendant said that he thought he was taking some blankets that belonged to Allison, and which Allison told him he could have if he would get them.

On re-examination, the witness said that if Allison ever left any blankets in the said wagon yard he never knew it.    He thought he would have seen such blankets had they been left there by Allison.    Defendant never asked witness about blankets left in the yard or harness house by Allison, nor did he ever say anything to witness about the Allison blankets until, as stated, about two weeks before this trial.    Frank Allison, during the fair in October, 1888, claimed that he lost a pair of blankets.

J. E. Wainscot testified, for the State, that he and Mr. Ross

went to Brownwood in a wagon and "put up" at Triplett's wagon yard. They met defendant and Bob Parnock in town after supper, and remained with them until bed time, when defendant went with witness to the wagon yard and proposed to sleep with him. Witness said something about being "short of cover," when the defendant said he had a pair of blankets on the counter in the harness house. Witness told him to get them. He went to the harness house and returned with a pair of blankets, which were spread on witness's bed, and he and defendant went to sleep. Witness got up early next morning and said something about a drink. Defendant said he would furnish the quarter of a dollar if witness would go after a half pint of whisky. Witness went to town and, after waiting some time for a saloon to open, bought the whisky and went back to the wagon yard. Defendant was not yet up. Witness finally told him that he wanted to put up his bedding, and to get up and take a drink. After defendant got up witness asked him what to do with his blankets. He replied: "Roll them up with yours and take them home for me." Witness rolled them up with his bed clothes, and went up town. Between nine and ten o'clock he met Triplett, who told him that a Mr. Switzer had lost a pair of blankets from the yard, and asked if witness knew anything about them. Witness replied that he did not, and told him about the blankets in his wagon which were claimed by the defendant, and that he could look at and take those blankets if they were the ones he was hunting. A few evenings after this John Hulse came to witness's house and said that defendant had sent him for the blankets. Witness told him to tell defendant that Triplett took the blankets from the wagon as the property of another person. Witness and defendant often met after the blanket transaction and before this indictment was found, but they never spoke about the blankets. It was dark when witness and defendant went to bed on the night of the alleged theft, and it was before day when witness put up his bedding. He could not, therefore, describe the blankets except that they were of a gray color.

John Hulse testified, for the State, that, early in December, 1888, he was at the defendant's house. He left that house with the intention of returning, and when he started the defendant asked him to come by Wainscot's house and get a pair of blankets for him. On his return to defendant's house, witness told him that Wainscot said that the blankets were taken

---

Opinion of the court.

---

from him by Joe Triplett as the property of another man. Defendant said: "Joe Triplett ought not to have taken those blankets, for they are blankets that Frank Allison gave me." Witness asked him: "Can't you be mistaken in the blankets?" Defendant replied: "Well, there may be something in that."

John Triplett, one of the proprietors of the Triplett wagon yard in Brownwood, testified, for the State, in substance, that he was at the yard when the defendant and Switzer "put up" at the wagon yard. Switzer put his bedding in the northwest corner of the harness house, and not on the counter in that house. Defendant, after his indictment for the theft of Switzer's blankets, told witness that he got the blankets off the counter. Allison never said anything to witness about leaving such blankets in the harness house until after the defendant was indicted. The witness saw no blankets other than Switzer's in the harness house on that night.

The State closed.

Frank Allison testified, for the defense, that, late in November, 1888, he went to Brownwood and put up at Triplett's wagon yard. He took a pair of gray blankets, with a dark border, to that yard, tied behind his saddle. When he left he forgot his blankets, leaving them at the wagon yard. A few days later witness started to Arizona, expecting to remain there. He told defendant that if he would get the blankets from the wagon yard he could have them. After his return from Arizona witness got the blankets and a saddle from defendant.

On his cross examination, this witness said that he never called on either of the Tripletts for the blankets he left at the wagon yard. Witness knew nothing whatever about the taking of Switzer's blankets.

Charles Boyd testified, for the defense, that he went to Brownwood with defendant on or about December 1, 1888. At Triplett's wagon yard, on that day, defendant showed the witness a pair of gray, dark bordered blankets that he said were left at said yard by Frank Allison, and given to him by the said Allison. Witness did not see the defendant when he got those blankets.

*John E. Bell,* for the appellant.

*W. L. Davidson,* Assistant Attorney General, for the State.

WILLSON, JUDGE. It is shown by the evidence that defendant explained his possession of the blankets by the statement

that one Allison had given them to him, and had author-
ized him to get them from the place from which he took them.
He proved that Allison had such a pair of blankets at the place,
and that Allison told him if he would get them he might have
them.   Allison's blankets were similar in all respects to those
taken by the defendant.   These facts are not disproved or con-
troverted by the State's evidence.   Defendant took the blan-
kets openly, without any concealment or effort to conceal the
taking.   He took them under a claim of ownership.

We think the evidence shows that the taking was not fraud-
ulent, but was under a mistake of fact, and does not, therefore,
sustain the conviction.  The judgment is reversed and the cause
is remanded.

*Reversed and remanded.*